UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON COREY POORMAN,<br><br>Defendant. | 3:16-CR-30161-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS |

This is an aggravated sexual abuse case. Jason Corey Poorman is charged with engaging in a sexual act with a girl, under the age of 12 years, in Indian country. He seeks to suppress statements he made to a federal investigator on voluntariness grounds. Because his statements were lawfully obtained under the Fifth Amendment, the Court recommends the suppression motion be denied.

## BACKGROUND

On the afternoon of June 11, 2014, FBI Special Agent Mark Fendrich interviewed Poorman in the agent's vehicle outside a residence in Spring Creek, South Dakota. Inside the vehicle, Agent Fendrich displayed his credentials and informed Poorman he was an FBI agent from Pierre, South Dakota. The agent also advised Poorman their conversation was being recorded. Poorman acquiesced to questioning and was asked at length about his relationship and interactions with K.S., who he had lived with and was

7 to 8 years old when the supposed molestation took place. He repeatedly denied ever having engaged in any kind of sexual act with the child, but said he was drinking "a lot"[1] during the time period in question (2004-2005) and "maybe it did happen."[2] Nonetheless, he was adamant he did not know and could not remember doing anything of a sexual nature to the child.

The interview lasted about 46 minutes and Poorman was not arrested at the conclusion of it, but instead, got out of the vehicle and left on his own. Ultimately he was indicted and charged with aggravated sexual abuse of K.S.[3]

## DISCUSSION

Poorman contends his statements to Agent Fendrich were involuntary and taken in violation of the Fifth Amendment. He argues the agent's false promises, deception, and misconduct prevailed upon his will and impaired his ability to resist self-incrimination. These artifices and improprieties, he says, require suppression – and exclusion from use at trial – of all statements.

The Fifth Amendment protects a criminal suspect from being compelled by the Government to incriminate himself.[4] Voluntary statements may be used against the

---

[1]Mot. Hrg. Ex. 1 at 18 (March 15, 2017).

[2]*Id.* at 18, 41.

[3]*See* 18 U.S.C. §§1153, 2241(c), and 2246(2) (sexual abuse of a person who had not attained the age of 12 years in Indian country).

[4]*See Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

2

suspect (and defendant if charged with a criminal offense) in court, but involuntary ones may not.[5]

A court must consider the totality of the circumstances, including the conduct of the agent and the characteristics of the suspect, in determining whether statements are voluntary.[6] Statements are voluntary if they are the product of the suspect's "free and unconstrained choice"[7] as opposed to being "extracted by threats, violence or express or implied promises sufficient to overbear [the suspect's] will and critically impair his capacity for self-determination."[8]

There is no proof – worthy of belief – Poorman was coerced into making any statements against his will. He agreed to meet with Agent Fendrich, had a friendly conversation with the agent for roughly three-quarters of an hour and made no attempt to terminate their dialogue. He was told he (1) did not have to talk to the agent, (2) was free to leave (through the unlocked vehicle door) whenever he wanted to, and (3) would not be arrested after the interview. At no time did the agent threaten him, yell, raise his voice or become hostile or intimidating. Nor did the agent use any force,

---

[5]See *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973); *Brown v. Mississippi*, 297 U.S. 278, 285-86 (1936).

[6]See *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005).

[7]*Schneckloth*, 412 U.S. at 225.

[8]*LeBrun*, 363 F.3d at 724.

punish or lay hands on him, brandish a weapon, or restrain him in any way. Poorman's age (38 years old), education (GED), background (convicted felon and sex offender) and conduct that day did not indicate he was low functioning or particularly suggestible and vulnerable to questioning by authority figures (and could be talked into anything). What's more, his responses to inquiries and the agent's testimony convincingly established he was not overwhelmed with emotion or tearful, under the influence of alcohol and drugs, or suffering from any mental or physical afflictions. Significantly, he denied having any inappropriate contact with K.S., including and especially touching the child's vagina – even accidentally. And he steadfastly maintained he did not know what happened to the child and did not remember doing anything to her.

Whether or not Agent Fendrich made inaccurate or misleading representations to Poorman or employed other persuasive machinations to beget inculpatory statements from him – which is contestable – does not matter. Agents routinely employ a variety of tactics to elicit confessions from a suspect, including claiming not to believe the suspect's explanations, making false promises, playing on the suspect's emotions, using the suspect's respect for his family against him, deceiving the suspect and conveying sympathy.[9] None of these tactics, however, render a confession involuntary unless "the

---

[9]*See United States v. Sanchez*, 614 F.3d 876, 884 (8th Cir. 2010); *United States v. Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005); *United States v. Astello*, 241 F.3d 965, 967-68 (8th Cir.), *cert. denied*, 533 U.S. 962 (2001); *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir.), *cert. denied*, 510 U.S. 822 (1993).

overall impact of the interrogation caused [the suspect's] will to be overborne."[10]

That certainly did not happen to Poorman. He was neither subdued nor bludgeoned by Agent Fendrich's stratagems and tactical questioning as the audio tape makes clear. Notably, Poorman:

1. Proclaimed he "did not do that [touch K.S. skin-to-skin on her vagina]," saying what happened to her was "not possible," "crazy" and "a shock."[11]

2. Remarked the only time K.S. would lay on the bed with him was "when her mother was there."[12]

3. Pointed out he was always sober whenever he was around K.S., and if he drank, he would leave the house and always "blacked out."[13]

4. Acknowledged he had "not been drinking today" but commented he was stressed because there was "a lot going on with his family."[14]

5. Said "I ain't admitting to nothing."[15]

---

[10] *United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011); *United States v. Martin*, 369 F.3d 1046, 1055 (8th Cir.), *cert. denied*, 543 U.S. 1035 (2004); *LeBrun*, 363 F.3d at 725-26; *see also United States v. Aldridge*, 664 F.3d 705, 713 (8th Cir. 2011) (police-dominated atmosphere and use of deceptive interview tactics not enough to show that defendant's statement was involuntary).

[11] Mot. Hrg. Ex. 1 at 5, 7-8, 16, 36.

[12] *Id.* at 40.

[13] *Id.* at 10, 18-19, 26, 35.

[14] *Id.* at 33.

[15] *Id.* at 26.

6. Recognized if he admitted to what K.S. reported he did, he would "go back to prison" and he did not want that to occur.[16]

7. Insisted he did not or could not remember anything.[17]

8. Expressed a willingness to take a polygraph.[18]

9. Made inconsistent statements and changed his story, and the information he provided, several times.[19]

10. Appeared to think about how to answer questions and the consequences of confessing.[20]

Statements like these are more evincive of a suspect who was trying not to implicate himself and, at the same time, interposing evidentiary defenses (lack of knowledge and alcohol intoxication) than of one who was duped, shoehorned or taken advantage of and was unable to resist the compulsion of his interrogator.

The audio recording and Agent Fendrich's testimony (which the Court found to be credible) plainly show the statements Poorman made in the agent's vehicle were voluntary.[21] They were ones he wanted to make and were not the product of any coercive environment and questioning that overwhelmed his faculties and acutely

---

[16]*Id.* at 24, 32, 35, 39.

[17]*See id.* at 18, 20, 23-26, 33, 38, 43, 45.

[18]*See id.* at 11, 43.

[19]*See* Mot. Hrg. Tr. at 12, 20-21 (March 15, 2017); Mot. Hrg. Ex. 1.

[20]*See* Mot. Hrg. Tr. at 31; Mot. Hrg. Ex. 1.

[21]*See United States v. Plumman*, 409 F.3d 919, 924-25 (8th Cir. 2005); *United States v. Bordeaux*, 400 F.3d 548, 560-61 (8th Cir. 2005).

disabled his ability to fend off the urge to confess.[22] This being the case, the statements may be used against him as substantive evidence at trial.

## CONCLUSION

Poorman's statements to Agent Fendrich were voluntary. Whatever false promises, jugglery, and contrivances were used or made did not hoodwink or otherwise sway Poorman into admitting to something against his will. Because his statements were obtained in compliance with the edicts of the Fifth Amendment, they are freely admissible as trial evidence.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Poorman's Motion to Suppress Statements[23] be denied for the reasons, and based on the authorities, stated in this report.

---

[22] *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *Brave Heart*, 397 F.3d at 1041; *LeBrun*, 363 F.3d at 726-27; *Astello*, 241 F.3d at 967-68; *Simmons v. Bowersox*, 235 F.3d 1124, 1132-34 (8th Cir. 2001), *cert. denied*, 534 U.S. 1158 (2002); *United States v. Otters*, 197 F.3d 316, 317-18 (8th Cir. 1999); *United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995); *Sumpter v. Nix*, 863 F.2d 563, 565 (8th Cir. 1988); *see also United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015) (polestar in deciding whether statements are voluntary must always be whether or not authorities overbore the suspect's will and critically impaired his capacity for self-determination; it is not enough to show authorities' representations were the but-for-cause of the suspect's confession); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, §6.2(c) (4th ed. 2015).

[23] *See* Docket No. 27.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[24] Unless an extension of time for cause is later obtained,[25] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[26] Objections must "identify[] those issues on which further review is desired[.]"[27]

DATED this 20th day of March, 2017, at Pierre, South Dakota.

BY THE COURT:

_____
MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[24] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[25] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[26] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[27] *Arn*, 474 U.S. at 155.