

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON COREY POORMAN,<br><br>Defendant. | 3:16-CR-30161-RAL<br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS |
|---|---|

The Government charged Jason Corey Poorman with aggravated sexual abuse of a child, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2). Doc. 1. Poorman moved to suppress statements he made to an investigator during an interview prior to the indictment. Doc. 27. After holding an evidentiary hearing, Magistrate Judge Mark A. Moreno issued a Report and Recommendation, recommending that Poorman's motion be denied. Doc. 42. Poorman has filed timely objections to that recommendation. Doc. 46. This Court has conducted a de novo review of the record, and for the reasons explained below, overrules Poorman's objections and adopts Judge Moreno's Report and Recommendation.

I.  **Facts**

On June 11, 2014, Mark Fendrich, a special agent with the Federal Bureau of Investigation, conducted an interview with Poorman. Tr. at 5–6.[1] The interview took place in Agent Fendrich's government vehicle, located outside a residence in Spring Creek, on the Rosebud Indian Reservation in South Dakota. Tr. at 7. Before the interview, Agent Fendrich

---

[1] Citations to the transcript from the evidentiary hearing, held on March 25, 2017, will be referred to as "Tr." The transcript is filed in the Court's CM/ECF system as Doc. 40.

1

knew some of Poorman's criminal history, and some information about his background, in addition to information about the allegations of sexual assault made against him. Tr. at 7. Agent Fendrich approached Poorman, identified himself as an FBI agent, and asked Poorman to speak with him inside his vehicle. Tr. at 8.

At the beginning of the interview, Agent Fendrich identified himself, and told Poorman that he did not have to talk with him if he did not want, that the doors to the vehicle were unlocked, that he was free to leave at any time, and that he "won't be arrested after the interview or anything." Ex. 1 at 0:40.[2] Agent Fendrich then explained why he wanted to speak with Poorman, telling Poorman that there had been an allegation of "inappropriate touching that occurred on a bed" made by K.S., the child of one of Poorman's ex-girlfriends, when Poorman was living with her. Ex. 1 at 4:45. After an almost ten second pause, Poorman responded that it was "not possible." Ex. 1 at 5:22. Throughout the interview, Poorman repeatedly and consistently responded "no" to questions about the allegations, that he "wouldn't do that," that there'd be "no reason why I'd do that," and that he just "can't remember" because of how long it had been since he had lived with K.S.'s mother. Ex. 1 at 7:45, 8:33, 12:10, 13:56, 15:06, 15:40, 16:19, 18:00, 18:15, 18:40, 24:45, 25:45, 26:10, 26:45, 30:28, 32:50, 33:35, 38:02, 38:15, 41:30, 42:50, 45:05. However, Poorman also stated that "maybe it did happen," and "maybe it did, it's been so long." Ex. 1 at 18:00, 41:30. In response to questioning by Agent Fendrich, at first Poorman stated that K.S. never laid down in his bed, Ex. 1 at 5:38, and then that there would be times when K.S. slept there, but only when her mom was also there, Ex. 1 at 16:45, 40:10. Poorman also eventually admitted that he was drinking during this time period, but would always

---

[2] Citations to Government's Exhibit 1, which is an audio recording of the interview between Agent Fendrich and Poorman, will be referred to as "Ex. 1" followed by the time on the recording.

2

leave the house when he got so drunk he blacked out. Ex. 1 at 26:10. Poorman specifically said that "I ain't admitting nothing." Ex. 1 at 26:55.

Throughout the interview, Agent Fendrich told Poorman that, although he could not promise, in his experience, it would look better for Poorman down the road if he admitted the truth, rather than denying it, and "if you did it, admit it," because it would be a one-time accident. Ex. 1 at 27:10, 29:20, 32:30. Agent Fendrich told Poorman that "you look like something's weighing pretty heavy on ya," Ex. 1 at 31:25, and there are a number of very long silences during the interview. When Poorman asked "are they tryna' throw me back in prison?," Agent Fendrich responded that he wasn't "the judge or jury or anything," and that "no, I'm not saying it will" go to court, Ex. 1 at 22:40, but explained that if Poorman were to fail a voluntary polygraph test, Agent Fendrich would be back to ask more questions, Ex. 1 at 24:00. Agent Fendrich added that he wasn't "going to sit here and lie to you" in saying "that it's not very likely" Poorman would go back to prison if he admitted the allegations. Ex. 1 at 32:10. Agent Fendrich told Poorman at the end of the interview that he would write up a report and give it to the U.S. Attorney's office, Ex. 1 at 45:30. Poorman stated that he understood if he admitted to the allegation, he would go back to prison, and that he did not want that to happen. Ex. 1 at 32:05, 35:40, 39:57.

Agent Fendrich testified that at all times his service weapon and identification badge were covered and concealed, that both Poorman and Agent Fendrich held a conversational tone of voice throughout the interview, and that there was no major change in Poorman's emotion or demeanor during the interview. Tr. at 10–11. During the interview, Poorman spoke of dealing with a lot of family stress, and after this allegation, "I got more stress to worry about now." Ex. 1 at 34:00, 36:50. Agent Fendrich also testified that Poorman did not appear to be under the

3

influence of alcohol or drugs during the interview, and did not appear to suffer from any intellectual or physical impairments. Tr. at 30, 32. The interview lasted just over forty-six minutes. Ex. 1.

Poorman was not arrested at the end of the interview, but a grand jury indicted him on November 9, 2016, on charges of aggravated sexual abuse of a child for an alleged incident that occurred between March 19, 2004 and May 6, 2005. Doc. 1. On January 23, 2017, Poorman filed a motion to suppress statements he made to Agent Fendrich, arguing that his will was overborne because of misconduct by Agent Fendrich, and therefore the statements made during the interview were not voluntary, in violation of the Fifth Amendment. Docs. 27, 28. Poorman alleged that Agent Fendrich made several false implied promises of leniency and engaged in deception, including telling Poorman that he would not be arrested following the interview, failing to disclose that Poorman was being investigated for federal criminal charges, failing to give a complete answer when Poorman asked whether the investigation would be going to court, and telling Poorman that if he admits to the alleged crime, it looks better and will be easier in the long run. Doc. 28 at 3. Judge Moreno held an evidentiary hearing, during which Agent Fendrich testified and audio of the interview was received into evidence. Docs. 37, 40. Judge Moreno then issued a Report and Recommendation, recommending that Poorman's motion to suppress statements be denied. Doc. 42. Poorman filed an objection to the Report and Recommendation, arguing that Agent Fendrich's statements and tactics created a coercive environment that led to the involuntary making of incriminating statements. Doc. 46.

## II.   Discussion

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In particular, a district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Poorman argues that his statements to Agent Fendrich were the product of misconduct by Agent Fendrich in the form of several false implied promises of leniency and deception that overbore his will and caused Poorman to make involuntary statements. Doc. 28 at 3. Having conducted a de novo review, this Court adopts the Report and Recommendation.

The Fifth Amendment privilege against self-incrimination precludes the use of incriminating statements made by defendants if those statements were involuntary as a result of an overborne will and critical impairment of self-determination because of "threats, violence, or direct or implied promises" made by police. United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995); see also Miranda v. Arizona, 384 U.S. 436, 467 (1966); Schneckloth v. Bustamonte, 412 U.S. 218, 226–27 (1973); United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc). In determining whether a statement was involuntary, both the conduct of the police and the personal characteristics of the defendant must be considered. See Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004) ("We consider, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition."); LeBrun, 363 F.3d at 724; United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998); Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993) (holding that tactics used by the police in an interrogation are "highly relevant," but that a defendant "must still prove that her incriminating statements were the product of an overborne will"). In determining whether the defendant's will was overborne and his capacity for self-determination

critically impaired, the "totality of the circumstances surrounding the interrogation" is considered. Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001).

Poorman asserts that it was the Agent's implied promises of leniency and false promises that in part made his statements involuntary. Doc. 28 at 3. The Eighth Circuit has established that while "a promise made by law enforcement is a relevant consideration in assessing police conduct, it is only one circumstance to be considered and does not render a confession involuntary per se." Bowersox, 235 F.3d at 1133. In this case, however, Agent Fendrich repeatedly stated that he could not promise Poorman anything, only that in his experience, it looks better when an individual admits to a crime, rather than continually denying it. Ex. 1 at 29:20, 32:30. Poorman claims there was a second implied promise of leniency when Agent Fendrich responded that "I'm not saying it will," when Poorman asked if the allegations were going to court. Doc. 28 at 3. In Bowersox, the Court determined that a law enforcement officer's statement that it was in the defendant's best interest to tell the truth was too vague to be an implied promise of leniency. 235 F.3d at 1133; see also Bannister v. Armontrout, 4 F.3d 1432, 1440 (8th Cir. 1993) (comments that it would be in the defendant's best interest to cooperate did not make defendant's statements involuntary). Poorman also points to the Agent's statement at the beginning of the interview that he "wouldn't be arrested or anything," as a false promise. Doc. 28 at 3. In Kilgore, the Eighth Circuit distinguished between a promise that an accused would never go to jail, and a promise that he would not go to jail that very evening, finding the latter not an issue, and even the former "alone would not make [the] confession involuntary." 58 F.3d at 353. Agent Fendrich said that he could not make any promises, and at another point of the interview agreed with Poorman that admitting the allegations would result in Poorman returning to jail. Ex. 1 at 32:10. While Poorman was not told specifically that he was

being investigated for potential federal sexual assault charges, Agent Fendrich told Poorman in great detail about K.S.'s allegations. Ex. 1 at 7:10. During the interview, Poorman seemed completely aware of the consequences of admitting to the sexual assault, noting that he would go back to jail, and did not admit to touching K.S. inappropriately, even accidentally, despite the Agent's questions. Ex. 1 at 26:55, 27:10, 32:05. Furthermore, Poorman was not immediately arrested after the interview; a period of over a year passed before he was indicted. See Doc. 1.

In considering whether a statement made was voluntary, this Court also must consider the defendant's personal characteristics, including his "maturity, education, physical condition, and mental condition." Sheets, 389 F.3d at 779; LeBrun, 363 F.3d at 724. At the time of the interview, Poorman was thirty-eight years old,[3] and was familiar with law enforcement as he had previously been convicted of a sexual crime and served time in jail. Ex. 1 at 9:00. Poorman stated he had not been drinking on the day of the interview, and Agent Fendrich testified that he did not appear to be under the influence of any alcohol or drugs. Tr. at 30. Although Poorman stated that he had family stress going on in his life, Ex. 1 at 34:00, and was feeling more stress after these allegations, Ex. 1 at 36:50, Agent Fendrich testified that although Poorman seemed anxious at times, it was not to the level where Agent Fendrich felt he needed to end the interview, and thought it was because "he was trying to think through a situation that we were talking about that was very serious." Tr. at 10. Poorman's personal characteristics do not suggest that he was unduly impressionable to coercive agent questioning. LeBrun, 363 F.3d at 726; Bowersox, 235 F.3d at 1133–34; Pierce, 152 F.3d at 813; United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990). Poorman has not pointed to any statements from Agent

---

[3] Although neither the audio of the interview nor the motion hearing establish Defendant's age, Judge Moreno included Poorman's age in his Report and Recommendation, and Poorman reported his birthday in the process of the bail determination. Docs. 14, 24.

Fendrich, nor to any personal characteristics of himself, that suggest any "physical or emotional coercion, direct or indirect." Kilgore, 58 F.3d at 353.

**III.    Conclusion**

Therefore, for the reasons stated above, it is hereby

ORDERED that the Defendant's objections to the Report and Recommendation, Doc. 46, are overruled. It is further

ORDERED that the Report and Recommendation, Doc. 42, is adopted. It is finally

ORDERED that the Defendant's Motion to Suppress Statements, Doc. 27, is denied.

DATED this 9th day of May, 2017.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

RECEIVED
MAY 09 2017
CLERK U.S. DISTRICT COURT
SIOUX FALLS, S. DAK.